NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

JAMES HENRY LANE, *Appellant*.

No. 1 CA-CR 23-0061
FILED 2-13-2024

---

Appeal from the Superior Court in Coconino County
No. S0300CR201900980
The Honorable Cathleen Brown Nichols, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian R. Coffman
*Counsel for Appellee*

Janelle A. Mc Eachern, Attorney at Law, Chandler
By Janelle A. Mc Eachern
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

¶1        James Henry Lane appeals his convictions and sentences for child abuse, felony murder, tampering with physical evidence, and seven drug-related offenses. He challenges only the child abuse and murder convictions, arguing that the superior court erred by denying his motion for new trial based on lack of evidence supporting the jury verdicts. We affirm because substantial evidence supports the convictions.

### BACKGROUND

¶2        Lily,[1] Lane's six-year-old granddaughter, began living with him in late 2018. Under a temporary custody agreement, Lane assumed parental responsibility for Lily. Lane had a good relationship with Lily, providing for her housing and nutritional needs, taking her to school, and buying her things. But at the same time, Lane was selling fentanyl, methamphetamine, and heroin out of his bedroom. Lane also used drugs and allowed other active drug users to live in the house, including his girlfriend Victoria Bizardie and his employee Ronald Lehr.

¶3        Lane adopted a house rule of no drugs around the children, but this rule was often violated without consequence. Lane himself violated his rule by occasionally smoking cocaine in Lily's room as she slept. It is undisputed that Lane and others, including Bizardie, were often under the influence of drugs while Lily was in their care.

¶4        One evening, Bizardie returned to the house and found Lane and Lily sleeping in Lane's bedroom. Bizardie woke Lane because someone was coming over to do some business. Lane got up and told Lehr to take Lily to her own bedroom. Lehr complied, carrying the child to her bed and laying her down while she slept. Sometime later, another house resident told Lehr that she had seen a bottle of pills on Lily's bedroom floor. Lehr went into Lily's room and found an unlabeled bottle containing blue pills.

---

[1]        We use a pseudonym for the minor victim.

Lehr reported this to Lane, who responded that he had asked "the bitch" —whom Lehr took to mean Lily—to pick up the pills from his bedroom floor. When he could not find the pill bottle, he knew she had taken them out of his room. Lane took the pills from Lehr and put them back in his bedroom. Lane then smoked cocaine, first in Lehr's bedroom and then in Lily's bedroom as she slept.

¶5 The next morning, Bizardie left the house for the day. Lehr asked Lane if they should check on Lily. Lane responded not to worry about her. When a house cleaner arrived later that morning, she went into Lily's bedroom and found the child unresponsive. Lane called Bizardie, who returned to the house and drove Lily to a hospital. Lane stayed behind to oversee a cleanup of the house, which included the transfer of bags and boxes from his house to his neighbors' outdoor trashcan.

¶6 When Lily arrived at the hospital, she was lifeless. She never regained a pulse despite intubation, CPR, and medication. When lifesaving efforts proved fruitless, she was pronounced dead. Lily's urine had traces of cocaine, and her blood contained a lethal concentration of fentanyl. A medical examiner determined an overdose of fentanyl to be the cause of death.

¶7 The police executed search warrants later that day. In the car that Bizardie used to take Lily (and later Lane) to the hospital, the police found indicia of drug sales including baggies of blue fentanyl pills, methamphetamine, and heroin. Police also found more indicia of drug use and sales in Lane's house, as well as evidence that Lane had attempted to rid the house of the incriminating items before the police arrived. Among other things, the police found a trash bag in the living room containing smoking pipes, foil with residue, and melted baggies. The counter and sink in Lane's bathroom were covered in drug residue, and the sink's p-trap contained a chunky white substance that later tested positive for cocaine and methamphetamine. Both the toilet and trashcan were filled with small baggies.

¶8 Lane and Bizardie were arrested several months later. The police searched their car and found drug paraphernalia, drug residue, and pills consistent with fentanyl.

¶9 Lane was charged and found guilty of multiple offenses, including felony murder predicated on child abuse. Lane moved for a new trial on the child abuse and murder counts, arguing that the evidence did not support a finding that he acted intentionally or knowingly. The superior

court denied Lane's motion, and later imposed a sentence. Lane timely appealed.

## DISCUSSION

**¶10**        Lane contends—albeit without much elaboration—that the superior court erred by denying his motion for new trial. He argues the evidence did not support a finding that he acted intentionally or knowingly with respect to the child abuse and murder counts.[2]

**¶11**        The superior court may order a new trial if "the verdict is contrary to law or the weight of the evidence." Ariz. R. Crim. P. 24.1(c)(1). The judge has broad discretion to determine whether the verdict is contrary to the evidence, and, in exercising that discretion, may assess the strength of the evidence in view of the judge's experience and training. *State v. Fischer*, 242 Ariz. 44, 50–51, ¶¶ 20–25 (2017). But on appeal, our review is limited to deciding whether substantial evidence supports the superior court's discretionary determination—we may not reweigh the facts. *Id.* at 51–52, ¶¶ 26–29.

**¶12**        A person commits class two felony child abuse if, "[u]nder circumstances likely to produce death or serious physical injury," he "intentionally or knowingly" causes a child under the age of 15 years to "suffer physical injury or, having the care or custody of a child . . . causes or permits the person or health of the child . . . to be injured or . . . causes or permits a child to be placed in a situation where the person or health of the child . . . is endangered." A.R.S. § 13-3623(A). Such an abuser is also guilty of first-degree murder if he causes the child's death "in the course of and in furtherance of the offense." A.R.S. § 13-1105(A)(2).

**¶13**        Here, substantial evidence at trial showed that—at the very least—Lane committed child abuse and felony murder by intentionally or knowingly permitting six-year-old Lily to live in a dangerous environment that resulted in her death. Lane had custody of Lily and was charged with protecting her from dangerous conditions. Instead of safeguarding the child, he allowed her to live in a drug-infested house with adults who were

---

[2]        Lane also argues in passing that a new trial was required because of prosecutorial misconduct. But he never mentioned misconduct in his motion for new trial, he makes no effort to identify the alleged misconduct in his appellate brief, and we detected no misconduct in our review of the record. Accordingly, any argument premised on prosecutorial misconduct is waived. *See State v. Bolton*, 182 Ariz. 290, 297–98 (1995).

under the influence. Lane sold drugs, used drugs, and allowed active drug users to live with the child. He intentionally or knowingly exposed her, a young child, to toxic drugs, drug sales, and active, impaired drug users on a daily basis. Lane was aware of the conditions and knowingly allowed the child to live in this situation, endangering her health and safety in a manner that led to her death. *See* A.R.S. §§ 13-3623(A)(1), -1105(A)(2).

**¶14** To compound his knowledge of placing Lily in a situation where her health was endangered, he directed her to handle fentanyl pills on her own just before she died. And when he was alerted to the fact that she had taken the pills to her room, he did nothing to ensure she had not taken any pills. Instead, he smoked cocaine in her bedroom as she slept. The next day, she was discovered unresponsive, and was declared deceased due to what was later found to be fentanyl poisoning. Lane has not shown that the superior court abused its discretion by determining that the evidence did not warrant a new trial on the child abuse and felony murder charges. Substantial evidence supports the jury's verdicts.

## CONCLUSION

**¶15** We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA